## VECHTE *vs.* BROWNELL.

Where the owner of land, who had agreed to give to his tenant a lease in fee at a specified rent, was attainted, and his interest in the premises was sold by the commissioners of forfeitures, subject to the equitable right of the tenant to the lot upon the payment of such rent; *Held,* that the interest of the purchaser in the premises was in the nature of a rent seck, and that such rent could be distrained for under the provisions of the revised statutes.

The remedy by distress for the recovery of rent in arrear is not limited to six years. The landlord is therefore authorized to distrain for all the rent in arrear, although it exceeds that time. But he cannot distrain for interest on the rent.

Where the purchaser of leasehold premises is indemnified by the vendor against the payment of rent admitted to be in arrear at the time of his purchase, if the vendor refuses to pay such rent, the vendee may pay the

same and resort to his indemnity; as he is not bound to wait until his property is distrained and sold by the landlord to satisfy such rent.

Where the mortgagee was proceeding, upon a statute foreclosure, to sell the mortgaged premises for a much larger sum than was actually due on the mortgage, and the mortgagor filed a bill in chancery to restrain such sale, without having tendered or offered to pay what was legally and equitably due, the court refused to allow costs to either party as against the other.

THIS was an appeal from a decree of the late vice chancellor of the fourth circuit, granting a perpetual injunction, restraining the defendant from proceeding to foreclose a mortgage given to him, under the following circumstances:

Previous to the revolution, Sir William Johnson, who was the owner in fee of lot No. 160 in the western allotment of the Kingsborough patent, containing about 113 acres, agreed to lease the same in fee to the father of the complainant, at the annual rent of $15. But previous to the execution of any lease therefor Sir William Johnson died, and the lot became the property of his son Sir John Johnson, subject to that agreement. Sir John was attainted for adhering to the enemies of the state, and his property was confiscated. The commissioners of forfeitures being satisfied that the complainant's father was entitled to the lot in equity, subject to the annual rent, gave him a certificate to that effect, and received the arrears of rent up to the 25th of September, 1785, and sold the future rents of the lot to Aaron Thompson. The complainant's father remained in possession of the lot and paid the rent thereof to Thompson until 1800; when he sold and conveyed the lot to his son, the complainant, subject to the rent. The complainant continued to pay rent to Thompson until the latter died, and after that he paid it to his son Aaron Thompson the younger, until the first of January, 1817; after which time the latter went into some one of the western states to reside, and did not return to demand payment of the rent until 1830.

In 1803 the complainant sold and conveyed 16 acres of the lot to J. Monro, free of rent; by which the residue of the lot became primarily liable for the whole rent. And on

the second of April, 1823, he sold 40 acres to P. Heacock free from rent up to that time, but subject to the payment of the future rents upon that 40 acres, in proportion to the whole lot. And on the 15th of September, 1827, he sold and conveyed to J. Brownell, the defendant, the remaining 57 acres of the lot, subject to the rent which should there-after accrue. But he agreed to indemnify the purchaser against all previous rents; telling him at the same time that the rent in arrear, including the arrears of rent on the forty acres, then amounted to about $250; that Aaron Thompson the younger, to whom the rent had been paid subsequent to the death of his father, had gone into the western states; and that in his opinion he was dead, and that the rent would never be called for. The defendant, however, refused to purchase without an indemnity against the arrears of rent. The complainant thereupon gave to him a bond and mortgage upon another piece of land, condi-tioned for the payment of $250 on demand, with interest. And the defendant gave to him a written stipulation, reci-ting the conveyance of the 57 acres to the defendant and that there were arrears of rent due thereon, and the giving of the bond and mortgage as an indemnity against the rent or any judgments which might be a lien upon the premises conveyed, and agreeing that the bond and mort-gage were not to be enforced except for the indemnity of the defendant against such arrears of rent, and the interest due thereon, or any judgments which might be a lien upon the premises. The defendant upon the same day purcha-sed of Heacock the 40 acres which had previously been conveyed to him.

In September, 1830, Aaron Thompson the younger re-turned and demanded payment of the arrears of rent of the defendant, who finally paid him $260 for the arrears of rent from the first of January, 1817; to which time the complainant stated, and produced Thompson's receipt to show that the rent had been paid. The defendant also bought of Thompson the future rent and reversion of the land for $200, and took his release of the premises. Pre-

vious to the final settlement for the arrears of rent, the complainant called upon the defendant and forbid his paying for more than six years arrears of rent; but refused to indemnify him against the cost to which he might be subjected to recover the arrears. A few days after this settlement the defendant advertised the mortgaged premises for sale, as upon a statute foreclosure, stating the amount due to him for principal and interest, on the 5th October, 1830, to be $303,46; which was the nominal amount of the bond and mortgage, with interest thereon from its date. The complainant subsequently filed his bill in this cause, a few days previous to the time appointed for the sale of the mortgaged premises, and obtained an injunction to stay the defendant's proceedings. And upon the hearing of the cause, upon pleadings and proofs, the vice chancellor made a decree for a perpetual injunction, and ordered the defendant to pay the costs of the suit.

*M. T. Reynolds*, for the appellant. The rent since 1817 being justly due, the defendant had a right to settle and pay the same and resort to his indemnity. The landlord could have distrained for the entire rent due, and therefore he was compelled to pay it, and having paid it, he can resort to his indemnity. The defendant at least has a right to claim the rent due from 1817 without interest, and the complainant not having tendered that sum, the decree should be to sell for that sum, with interest and the costs of advertising, and of this court.

*Daniel Cady*, for the respondent. The mortgage mentioned in the complainant's bill was given by him to indemnify the defendant against any rent or other incumbrance then on the land sold by the complainant to the defendant; and as the defendant has not shown that he was compelled or could have been compelled to pay the rent, he has no right to foreclose the mortgage. The complainant is entitled to a decree for a perpetual injunction against any proceedings to foreclose the mortgage mentioned in the bill,

1840.

Vechte
v.
Brownell.

and for the cost of this suit. (*Van Slyck* v. *Kimball*, 8 *John. Rep.* 198. *2 Chitty's Pl.* 88, 138.) If it be supposed that Thompson might have distrained for the rent, and that the possibility of such distress authorized the defendant to foreclose the mortgage, the remedy by distress was barred by the statute of limitations, except as to the rent of five years which had accrued next before the payment was made to Thompson.

THE CHANCELLOR. As I have not been furnished with the reasons of the decree of the court below, it is difficult for me to conjecture upon what grounds the decision of the vice chancellor was based. The effect of the decree, as admitted by the counsel of both parties upon the argument, although I have not been furnished with a copy so as to enable me to judge of its particular terms, is to restrain the appellant from even proceeding upon his mortgage to recover any part of the arrears of rent which he paid to Thompson in September, 1830. I presume, therefore, the vice chancellor must have concurred with the complainant's counsel in his first point, that the defendant had not been compelled, and could not have been compelled by Thompson, to pay any part of the arrears of rent which had accrued previous to the conveyance to him in September, 1827. In the peculiar situation of this title there certainly might be some difficulty in proceeding at law to collect the arrears of rent which became due, while the premises were occupied by another tenant than the one against whom the proceedings were instituted, in case no distress could be found upon the premises. For the grant to A. Thompson, and his heirs, appears to have been an interest in the nature of a rent seck, without any provision for a re-entry for non-payment of rent. The object and intent of the commissioners of forfeitures undoubtedly was to sell all the interest of the state, which had accrued by the attainder of Johnson, subject to the incumbrance of such a lease as Vechte was in equity entitled to receive. And indeed such was their duty under the statute. In case of any

real difficulty at law, therefore, in enforcing the payment of the rent, it probably would be the duty of this court to put the present owners of the land, and of the rent, in the same situation, as if a lease had been actually given by Sir William Johnson to the complainant's father, instead of a mere agreement for a lease. And if necessary, after such a lapse of time, the execution of an actual lease from the elder Thompson to Vechte, reserving rent, might be presumed ; so as to give the landlord the usual remedy, by distress for the recovery of such rent, or the summary remedy by an application to a judge, if no sufficient distress could be found upon the premises. (*See Collet* v. *Jaques,* 1 *Chancery Cases,* 120.) I think, however, that it was not necessary in this case that the heir of the grantee of this rent should even have resorted to a court of equity for a remedy, to compel the defendant to pay all the arrears of rent which were actually due and unpaid. (*Blake* v. *De Lesseline,* 4 *M'Cord's Rep.* 496.) By the 18th section of the title of the revised statutes relative to the rights and duties of landlords and tenants, &c. (1 *R. S.* 747,) it is expressly provided, that when any certain services or certain rent, reserved out of any lands or tenements, shall not be paid or tendered when due, the person entitled thereto may distrain for the same. And the note of the revisers, to this section, shows that it was intended by this provision to extend the remedy by distress to every kind of rent which was fixed and certain ; as it was extended in England by the 5th section of the act, 4 Geo. 2d. ch. 28, which had not before been adopted here. (*See* 4 *Evans' Stat.* 168. 3 *Kent's Com.* 461. 3 *R. S. 2d ed. p.* 600.) The owner of the rent therefore having a perfect right to distrain for the same under this statutory provision, the defendant was not bound to wait until the property was distrained and sold to pay these arrears of rent. Neither was it his duty to relinquish the use of the farm, in order to prevent the property he might put thereon from being placed within the reach of a distress warrant. It is then perfectly immaterial whether at the time of the settlement he had any

property on the land, or not, which could then have been distrained.

It was admitted by both parties that the elder Thompson was dead, and that the person who received the rent after his death, was his son ; nor was there any evidence that he had any other children or descendents living at the time of his death. And it did not lie upon the defendant to prove negatively that the original grantee of the rent did not make a will, devising the rent to a stranger to his blood. This, in the absence of all proof that any other person had any interest in this rent, was sufficient to show that it had been paid to the right person. Indeed, the payment of the rent originally to him, by the complainant, previous to 1817, was of itself a recognition of his right. And the allegation that he claimed to receive it as agent of his mother, is not supported by any proof ; nor by the production of the receipts, in the hands of the complainant, showing that it was receipted for in the character of agent only. If he received any part of the rent as the agent of his mother, it was probably that part of it which accrued before his father's death, and which, therefore, might have belonged to her as the personal representative. But the subsequent rent belonged to the heir. The defendant in his answer also states that the complainant told him that Thompson, to whom it was paid, was the owner of the rent, and the proper person to settle with for the same. And this part of the answer is responsive to the interrogatory in the bill, which called upon the defendant to state whether Thompson showed any, and what title to, or authority to receive the rent. There is no foundation for the objection that the grantee of the rent could not recover the arrears thereof for more than six years. Even if the only remedy for the recovery thereof was by an action of debt, as upon simple contract, or an action for use and occupation, the facts in this case show that the remedy would not have been barred ; for there was such an admission that the rent remained due and unpaid, as would have been sufficient to take the case out of the statute of limitations.

At the time the complainant sold to the defendant, it was conceded that the rent had not been paid or demanded for many years previous ; and, according to the testimony of Stewart and of Haring, only up to 1817. The mortgage itself, which the defendant took, was given as an indemnity against these admitted arrears ; which are in terms referred to in the writing executed at that time to show the purposes for which the bond and mortgage were given. Besides, there was no statute that I am aware of, which limited the distress for arrears of rent to six years. Chancellor Kent says, the distress may be made for all the arrears of rent arising during the tenancy, though the rent of several years should happen to be in arrear. (3 *Kent's Com.* 2d ed. 483.) And certainly that was the law of England, until the recent statute, (3 *and* 4 *Wm.* 4, *ch.* 27, § 42,) enacted in pursuance of the recommendation of the real property commissioners, restrained the collection of rents, either by distress or suit, after six years from the time when the same became due except upon a written admission that the rent was due and unpaid. (1 *Flintoff's Law of Real Pr.* 40.) For these reasons I have no doubt that the defendant was right in supposing that Thompson, the owner of the rent, had a perfect remedy against him, by distress, to recover the arrears from the first of January, 1817 ; and that he is entitled to recover upon his bond and mortgage, so much as the complainant was justly chargeable with, and the interest thereon from the time such rent was paid to Thompson on the 28th of September, 1830. The decree appealed from was, therefore, clearly erroneous, and must be reversed.

I think the defendant however was wrongly advised, if he supposed he was liable for or could in any way be compelled to pay interest upon the arrears of rent which had become due and payable before he purchased the premises from Vechte in September, 1827 ; although from the writing which Brownell gave to Vechte, showing what was the object and intent of the mortgage, it is evident both parties then supposed the land was chargeable with inter-

est, as well as with the rent itself.   Here was no privity of contract between the defendant and Thompson, as the owner of the arrears of rent, which could have enabled the latter to bring any action against him for the rent which accrued before his purchase ; so as to have enabled the jury to give interest by way of damages for the non-payment of the rent upon the several days when it fell due.   And when the owner of the rent proceeds by distress, to recover the same, he is not entitled to distrain for interest thereon; especially in a case where there is no agreement that the tenant shall pay interest, and that the landlord may distrain for that as well as for the rent itself.   In *Sherry* v. *Preston*, (2 *Chitty's Rep.* 245,) which was an action of replevin brought against the landlord for distraining upon the plaintiff's goods for the rent, after he had agreed to pay interest on the arrears to the defendant, Mr. Justice Buller says, " The defendant could not distrain for the interest, but he had a right to abandon the interest, and take a distress for the rent."   Nor would a court of equity, under the circumstances of the present case, have interfered in favor of Thompson for the mere purpose of giving him interest upon his arrears of rent, if he had no remedy at law, as against Brownell or his property.   He had been absent for ten years, without leaving any agent in the neighborhood of the premises who was authorized to receive the rent, which had not been demanded during that time.   The legal presumption, therefore, was that the tenant was at all times ready to pay the rent as it became due, if it had been called for ; and here was no express agreement to pay the rent on a particular day, so as to render a formal tender of the rent upon the land necessary to prevent the claim for interest from attaching to the debt.

The rent for which the complainant was liable under his agreement, he having sold the 16 acres to Monro free of rent, was the rent upon the whole lot from the 1st of January, 1817, to the 2d of April, 1823, when he sold the 40 acres to Heacock free of rent up to that day ; and $\frac{73}{113}$ of the rent of the lot from that time until the 15th of Sep-

tember, 1827, when the defendant purchased under the agreement for an indemnity against all rent which had previously accrued, and for which the lands conveyed to him were liable. The terms of the stipulation are broad enough to cover the arrears upon the 40 acres, if the defendant's lands, which were conveyed by the complainant and wife to him, had in fact been charged with the whole arrears. But as the 40 acres were primarily liable for Heacock's proportion of the rent from April, 1823, the defendant, who was himself the purchaser of that part of the lot also, had no right to resort to the bond and mortgage for that portion of the arrears of rent, even if Heacock had been unable to refund the same.

As the defendant claimed more than he was entitled to under his statute foreclosure, I shall make no provision to pay him the expense which he incurred by advertising. And if the complainant had been willing and had offered to pay him what he had a legal right to demand, and he had still persisted in selling the property for the purpose of raising a larger sum, to which he was not entitled, the complainant would have been justified in filing this bill to stay the sale ; although he would have had a perfect remedy at law to recover back the proceeds of the sale beyond the amount actually due. It is evident, however, from the whole case, that the complainant did not intend to carry into effect his agreement, in good faith, in relation to the arrears of rent ; and that he meant to drive the defendant to protect his rights by expensive and useless litigation, knowing himself to be insolvent and irresponsible. I shall not therefore give costs to either party upon the proceedings previous to this decision ; provided the amount for which the complainant was liable, as above declared, together with the interest thereon from the 28th September, 1830, when the arrears of rent were received by Thompson, are paid to the defendant or his solicitor within three months after the service of a copy of the decree to be entered hereon. But if the amount is not paid within the time prescribed, the complainant's bill is to be dismissed with costs, including the defendant's costs on this appeal.