Selden, J.
A brief statement of the principles which appear to be definitely settled, touching the rights and liabilities of parties under instruments of the nature of that which forms the-foundation of the present action, by enabling us to see distinctly what remains undetermined, will be of service in the examination of the questions now presented for decision. The following may be regarded as principles thus settled:
1. That, since the passing of the act of 1787,. “ concerning tenures” (however it may have been before that time), it has not been possible to create any new tenures in this State upon conveyances in fee. Such conveyances operate as assignments and not as leases, whatever name may be given to them, and leave neither any reversion, nor possibility of reverter in the grantor. (De Peyster v. Michael, 6 N. Y., 467; Van Rensselaer v. Hays, 19 id., 68.)
*556 2. That an annual rent, issuing out of the lands, reserved in such Conveyance, to the grantor, his heirs and assigns forever, with a covenant on the part of the grantee for its payment, together with a right of distress and re-entry in case of nonpayment," although not a rent-service, for want of a reversion in the grantor, is a fee farm rent, or, if not strictly such, (Bradby on Distress, 34; Harg., n. 5, on Co. Litt., 143, b; 19 N. Y., 76,) it is a rent-charge in fee, arid equivalent to such rent-charge granted by the owner of lands in fee. (Litt., § 217; Co. Litt., 143, b; Gilbert on Rents, 16, 17, 39; 2 John. Cas., 26; 2 Cow., 659; 13 N. Y., 369; id., 77, 78, 100.)
3. That such rent is a hereditament and descends, in the absence of other disposition, to the heirs of the party to whom it is reserved, arid is devisable and assignable in all respects like other incorporeal hereditaments. (2 Sand. on Uses and Trusts, 32, 5th ed., Lond., 1844; Shep. Touch., 238; Lade v. Baker, 2 Vent., 149, 260-266; Maund's Case, 7 Co., 286; 2 Johns. Cas., 17; id., 24; 12 N. Y., 182; 19 id., 68, 100.)
4. The right to distrain, and the right to maintain actions of annuity, and assize of novel disseisin, at common law, followed the ownership of the rent, when it passed from the person to whom it was reserved, whether it passed by descent or assignment. (Vechte v. Brownell, 8 Paige, 212; Bradby on Dist., 51, 52; Adams on Distresses, 36; Maund’s Case, 7 Co., 28, b; Co. Litt., 144, b., and Harg., note 1; Roscoe on Real Actions, 65; Gilbert on Rents, 83-100; Litt., §§ 233-235.) Attornment by the tenant was necessary to entitle the assignee to distrain or to maintain annuity, and actual seisin of the rent by payment of a part, to authorize an action of assize; but that necessity, at least so far as related to attornment, was removed ■ in England, by the statute 4 Anne, ch. 16, § 9, which was early re-enacted in substance, and has since been kept in force, in this State. (2 Sand. on Uses and Trusts, 40-46; Butler’s Note, 272, to Co. Litt., lib. 3, 309 b.; Gilbert on Rents, 32, 33-51, 52; Doug., 624; Strange, 108; Yelv., 135; 2 Greenl. Stat., 115; 1 R. L., p. 525, § 25; 1 R. S., p. 739, § 146.)
5. That the covenants entered into by the grantee of the *557 lands, in behalf of himself, his heirs and assigns, are covenants real which run with the land, and are binding upon the heirs and assigns of the covenantor, successively as to all breaches of such covenants which occur during their respective ownership of the lands. (Van Rensselaer v. Hays, 19 N. Y., 68; Platt on Covenants, 493, 494.)
6. That a devise or assignment of the rent gives to the devisee, or assignee, at least the equitable interest in the rent, and the right to equitable remedies for its recovery, without any aid from the act of 1805, partially repealed by the act (ch. 396, Laws of 1860; 19 N. Y., 85, 86).
7. That the personal representatives óf the original grantor, to whom 'the rent was reserved, can maintain no action on the covenant for the payment of rent, on account of any default .in payment occurring after the death of such grantor. (The Executors of Van Rensselaer v. The Executors of Platner, 2 Johns. Cas., 17.)
8. That a devisee or assignee of the rent, can maintain no action against the personal representatives of the original covenantor, on account of any default in payment of rent, occurring after the death of such covenantor. (The Devisees of Van Rensselaer v. The Executors of Platner, 2 Johns. Cas., 24.)
9. The terms of the devise to the plaintiff, are sufficient to vest in him the right to the rent in question.
Several cases have been decided by this court, in which the right of the present plaintiff, under the devise in question, to rents of the character of those here claimed, has been sustained, and although the subject of the sufficiency of the devise to vest the title to the rents in the devisee, does not appear to have been specially noticed by the court, it is hardly possible that it could have passed unobserved, and the decisions in those cases, if not conclusive, raise a strong presumption, in the plaintiff’s favor upon this point. (Van Rensselaer v. Snyder, 13 N. Y., 299; The Same v. Hayes, 19 id., 68; The Same v. Ball, Id., 100.) But regarding the question an open one, I entertain no doubt that the language of the devise is broad enough to embrace the rents. In the case of Hunter v. Hunter *558 (17 Barb., 28-86), such rents were held to pass by the words “ all my lands, .in the county of Greene.” Whether perpetual rent charges are properly denominated lands, or not, they certainly come within the terms “ lands, tenements and hereditaments,” used in the present devise. Lord Coke says (Co. Litt., 6 a): “ Tenement is a large word to pass not only lands and other inheritances,, which are holden, but also offices, rents, commons, profits apprender out of lands, and the like, wherein a man hath any frank tenement, and whereof he is seised ut de libero tenemento. But hereditament is the largest word of all m that kind, for whatsoever may be inherited is an hereditament, be it corporeal, incorporeal, real, personal or mixed.’’ " (2 Rolle’s Ab., 57; Rich v. Sanders, Styles, 261-278.) That rent charges in perpetuity, are hereditaments, has never been questioned. (2 Johns. Cas., 21, 26; Jemmot v. Cooly, 1 Lev., 170; S. C., 1 Saund., 112.)
• From the foregoing statement it will be seen that the reservation of the rent in question is valid; that the covenant for its payment is a covenant real, running with the land, binding the defendant personally for its payment (his ownership of the lands, when it accrued, being undisputed), and that the plaintiff, by virtue of the devise from his father, was the owner of the rent when it became due, having, at common' law, the right to distrain for it, or to maintain an action of annuity for its collection. The further question is-now presented, whether the devisee or assignee of the rent may, either at common law, or by virtue of-any statute now in force, maintain an action on the covenant for the rent against the grantee or assignee of the covenantor.
The burden of the covenant, as we have seen, runs with the land, against the person who is, in equity, bound to pay the rent. Does the benefit of such covenant run with the rent in favor of the person who is in equity entitled to receive it? If the assignee of the rent cannot avail himself of the covenant for its payment, one object of the parties to the covenant will fail. They covenanted for acts to be performed by and to each other’s heirs and assigns annually forever, in regard to this land. *559 These acts were designed to be performed directly between such heirs and assigns, without the necessity of maintaining the expensive and cumbrous machinery of perpetual personal representatives of the parties. The decisions which have been referred to show that, on the part of the person bound to pay the rent, no such machinery is necessary: that the law deals directly with him, as holding the land charged with the rent, and, therefore, in law as well as in equity, bound to pay it: that the legal and the equitable duties accompanying each other, both follow the title to the land, into whatever hands it may go, the assignee taking the place of the covenantor, and being bound by his covenants, so long as he remains such assignee, and no longer. (Platt on Cov., 494.) The same decisions show, also, that on the other side the equitable right to receive the rent passes to the assignee in the same manner as the equitable obligation to pay it follows the title to the land. It is claimed, on the part of the defendant, that the legal right of action on the covenant does riot pass with the rent to the assignee, but is either extinguished by the assignment, or remains in the original covenantee, or-his personal representatives.
The case of Hays, above cited, shows that the covenant is not extinguished by the assignment; and no adequate reason can be given for denying to the assignee of the rent the right to maintain an action upon it. The only reason which has been assigned in the authorities to which we have been referred for such denial, is that upon which the common law prohibited the assignment of all choses in action, the prevention of maintenance. But the covenant for the payment of rent is not within this rule. It is not ‘a covenant in gross or a mere chose in action (Stevenson v. Lombard, 2 East., 576), but is a part of the security for the payment of the rent. The rent itself being assignable, the covenant for' its payment should, it would seem, be assignable to the same extent, for the reason given by Chief Baron Gilbert, why a nomine poence, when provided for in the lease, passes to the assignee of the rent, viz.: “ because whosoever has a right to the rent ought to have *560 all that security for the payment of it which was taken on the original creation of it.” (Gilbert on Rents, 143; Cro. Eliz., 895; 7 Peters, 605, 606.) Rent due is a mere chose in action and not assignable, but it is otherwise of rent not due. (Bradby on Distresses, 52; Adams on Distresses, 36.) The-covenant for its payment should, therefore, be assignable before breach, but not after. It was so held in Demarest v. Willard (8 Cow., 211; T. Ray., 200.)
Even if the law was clearly settled in England, that such covenants were not assignable, I should be unwilling to follow that-rule, unless it had been already recognized by our own courts, especially since we have abrogated the doctrine of maintenance, upon which alone it rested. It is, however, far from being settled in England, and no precedents in its support in this State have been brought to the notice of the Court; on the contrary, there are several decisions leading to the opposite conclusion.
In the case of Hays, the right of the assignee to maintain an action on the covenant for the payment of rent in a lease or indenture, like the present, was sustained, but the decision was placed upon the effect of the act of 1805, which was held to extend to the assignees of rents reserved in conveyances in fee, the same remedies by action for the non-performance of covenants, against the grantees and their assigns, which were secured to the assignees of reversions, by chapter 7 of the Laws of 1788.
Since that case was decided, and prior to the commencement of the present action, the legislature, by chapter 396, of the Laws of 1860, has declared that the act of 1805 and its reenactments shall not apply to deeds of conveyance in fee, made before the 9th day of April, 1805. The plaintiff’s cause.of action was complete under the act of 1805, prior to the passing of the act of 1860, and the constitutionality of the latter act, as applied to the present action, is therefore denied. The act of 1805, has been held to affect the remedy only; and not the contract, and for that reason not liable to this objection, when urged by the assignee of the covenantor. (19 N. Y., 68.) The objection to *561 its repeal would nevertheless be effectual in favor of the plaintiff, if such repeal would deprive him of all substantial remedy for the recovery of the rent, but not otherwise. As I am satisfied that his remedy was not affected by the repeal, this question becomes immaterial. '
It is insisted on the part of the plaintiff, that the act of 1788, as reenacted in the Revised Statutes (vol. 1, p. 747, §§ 23, 24), without the declaratory act of 1805 (id., § 25), is broad enough to embrace the present case, and to give to the assignee of the rent, a right of action on the covenant for its payment. I think the act in its present form might fairly receive that construction ; but its title as originally passed, viz., “An act to enable grantees of reversions to take advantage of the conditions to be performed by lessees,” would create a doubt whether the general expressions contained in the act were not intended to be limited to grantees or assignees of reversions though such limitation is not expressed. So far as the statute has received the attention of judges, the opinion appears to have been entertained that its benefits were confined to parties having the reversion of the lands to which the conditions or covenants related, and such is the established construction of the statute 32 Henry VIII,. chapter 34, after which our statute was modeled. The solution of the present question, therefore, must depend upon the common law, or upon recent statutes relating to the prosecution of actions.
The first ground upon which the judgment in this case is sought to be sustained without the aid of the acts of 1788 and 1805, is, that the covenant for the payment of the rent, is not a merely personal covenant, but a covenant real, the benefit of which passed to the plaintiff on the devise of the rent to him. This question has been much discussed by judges and elementary writers, and cannot be regarded as entirely at rest on either side of the Atlantic. I shall not attempt to review the cases, as very little could be added to what appears in the English and American notes to Spencer's Case (1 Smith’s Lead. Cas., 22), and in the recent treatise of Mr. Sugden on Vendors and Purchasers.
*562 Mr. Sugden says (vol. 2, p. 482): “ The rent charge is an incorporeal hereditament, and issues out of the land, and the land is bound by it; the covenant, therefore, may well run with the rent in the hands of an assignee; the nature of the subject, which savors of the realty, altogether distinguishes the case from a matter merely personal.” Again, at page 492, after reviewing the English cases bearing upon the question, he says : “ Upon the whole it is submitted, that covenants like those in Brewster v. Kidgéll ” [which was a case of a rent charge in fee with a covenant for its payment, free from taxes],“ ought to be held to run in both directions; with the rent or interest carved out of or charged upon it,” [the land] “ in the hands of the assignee, so as to enable him to sue upon them; with the land itself in the hands of the assignee,, so as to render him liable to be sued upon it.” This conclusion is confirmed by the decision of the Supreme Court of the United States, in the case of Scott v. Lunt’s Administrators (7 Pet., 596), in which the assignee of a rent charge in fee, created by an indenture in all materialrespects similar to that under which the plaintiff claims, was held entitled to maintain an action of covenant for the rent, against the administrator of the covenantor.
The-difference of opinion on this question among judges and elementary writers, has, I think, mainly arisen from a misunderstanding by some of them, of the remarks of Lord Holt, in the case of Brewster v. Kidgell, as was shown in the opinion of Judge Denio, in.the case of Van Rensselaer v. Hays (supra). In that opinion, the learned judge, after referring to the passages above quoted, from the treatise óf Mr. Sugden says: “ The great learning of the author, afterwards as Lord St Leonards, Lord Chancellor of England, would incline me to adopt his conclusion, were it not that we have a precedent the other way in this State,” referring to the case of The Devisees of Van Rensselaer v. The Executors of Platner, (2 Johns. Cas., 26.) I do not understand the decision in that-case as in conflict with the opinion of Mr. Sugden; on the contrary, when considered in connection with the case of The Executors of Van Rensselaer v. The Executors of Platner, decided at the same term, it appears *563 to me very strongly to confirm that opinion. Both those actions were brought to enforce covenants for the payment of rent, entered into by Plainer, the defendant’s testator, in an indenture executed in 1774, by which John Yan Rensselaer conveyed to him- in fee simple, reserving rent with rights of distress and re-entry, and with covenants for payment on the part of the grantee, in all respects similar to those contained in the indenture, on which the plaintiff relies in the present action. In the case in which the Executors of Yan Rensselaer, were plaintiffs, they had claimed in their declaration several years’ rent, which accrued during the life of their testator, and for one years rent, which became due after his death, and had obtained a verdict.for the whole. All the rent had accrued after the death of Plainer, the original covenantor. A motion was made in arrest of judgment, and two grounds were relied upon in support of the motion. First, that the executors of Plainer were not liable for rent, which accrued subsequent to the death of their testator. Second, that the executors of Yan Rensselaer, could not recover for rent, which accrued subse-. quent to the death of their testator. It was’ held that the executors of Plainer were liable on the express covenant of their testator, notwithstanding the descent of the land to his heirs, and that the recovery, so far as it embraced rent, which became due during the life of the plaintiff’s testator, was correct; but that the plaintiffs had no right of action for the year’s rent which became due after the death of their testator, and for that reason judgment was arrested. Kent, J., said: “It is clear that the executor can only go for rent due and payable at his testator’s death, where the rent, as in the present case, goes on the testator’s death to his heirs.’’ In the other case, parties to whom John Yan Rensselaer had devised the rent, were plaintiffs, and had obtained a verdict against the executor of Plainer for rents, which became due, subsequent to the death of both, Plainer and Yan Rensselaer. The judgment was arrested, not on the ground that the devisees were not entitled to maintain an action on the covenant, but on the ground that the defendants were not liable to the plaintiffs as devisees for the rent, “ which,” *564 as the court says, “ is created by reason of the contract, and is by reason of the profits of the land, wherein none is longer chargeable with them than the privity of estate continues with them.” It was held that the executors of the covenantor were liable only by force of the personal contract of their testator, without reference to the land, and in that respect were liable only to those “ legally competent to represent the mere personal rights ” of the covenantee, which the plaintiffs clearly were not. Chief . JusticeLansing, who delivered the opinion of the Court, said: “ This rent is a fee farm rent, (Harg. Co. Litt., 145, b., n. 5,) or rent charge; it is perpetual. The rent is real estate, and so, certainly, is the estate out of which it issues; the rent and the land granted are equally transmissible to the heirs of the person seised. * * * If the covenant descends with the land, it must equally descend with the rent issuing out of the land; and if so, the personal representatives cannot, after the death of the parties, and for rents accruing after the death of both, either maintain or he subject to an action. On the privity of contract, the defendants cannot be liable to the plaintiffs, because they are not legally competent to represent the mere personal rights of the testator arising from the contract. They cannot otherwise represent him, than as the rights of the testator devolve upon them; but those being merely taken as devises, they are strictly confined to the real estate. If they claim against the defendants deducing their title by the devise, they must claim on the principle, that the common ligament, the estate charged, unites them in interest, as privies, with the defendants; but it is not pretended that the executors hold the estate, or have any interest in it, and on this ground the action is not attempted to be sustained.” All which this case decides, therefore, is, that the executors of a person, who covenants to pay a perpetual rent charge, are not liable on the covenant to any person except the covenantee, and his personal representatives; and, in connection with the previous case, which decides that such personal representatives, cannot recover for rent falling due after the death of their testator or intestate, for the reason that the rents go to the heir or devisee, it shows, that the executor of the covenantor *565 can never be made liable for any default which does not occur during the life of one of the original parties to the' covenant. Possibly this limitation of the liability of covenantors may not be consistent with the common law rule, as recognized in England (Platt on Cov., 194, 195; id., 493; 7 Pet., 604); but it is in substantial accordance with the manifest intention of the parties, as expressed in the contract, and is strongly recommended by its justice and convenience. These cases having been decided by a court of great learning and ability, more than fifty years since, and the correctness of the decisions, so far as I am informed, never' having been questioned, I cannot do otherwise than to recognize them as ■ expressing the proper limitation of the liability of parties on covenants for the payment of perpetual rents.
The Supreme Court of Pennsylvania has decided that the liability of the personal representatives of the covenantor in such a case extends only to defaults which occur during the life of such covenantor. Lowrie, J"., in delivering the opinion of the court, among other things, says: “ The grantor of the land cannot be presumed to have placed any value on such a covenant; for the personal covenant of the original grantee is as nothing in a series of tenants lasting forever. The real security is the covenant running with the land and encumbering it, and this is the essential reliance of the owner of the rent. It is a covenant payable, in contemplation of the parties, out of the profits of the land; and it would be entirely unreasonable that the law should hold the administrator for the rent, when it gives the land to the heir.” (Quain’s Appeal, 22 Penn. State R., 10 Harris, 510.)
The obligation of the covenant, therefore, which passes from the original covenantor to his grantee of the land, and the other grantees in succession (Platt on Covenants, 480, 487), binding them to pay the rent accruing during their ownership, cannot, where the rent has been assigned, be enforced, either by the personal representatives or by the heirs of the covenantee, for want of any privity either of contract or estate between them and the assignee of the land; and such covenant *566 becomes entirely nugatory unless it can be enforced by the assignee of the rent. I am satisfied that it is not extinguished, but may be enforced by the assignee of the rent; that there is such a privity of estate between the assignee of the rent, who is entitled to demand and receive it, and the owner and occupant .of the land, who is bound by the covenant to pay it, as entitles the former to maintain an action upon the covenant for its collection.
■ But two reasons have been assigned why the benefit of the covenant to pay the rent does not run with the rent in the same manner as its burden runs with the land. One is, that covenants do not run with land except where tenure exists; and the other, that covenants can only run with land, and that rents are not land. Neither of these propositions is sound. It has often been held that covenants, both as to their benefits and their burdens, run with land,- where no tenure in its strict sense exists between the parties.
The case of the prior of the convent, who, with the assent of his convent, covenanted with the lord of a manor to celebrate divine service for the lord and his servants, in his chapel, parcel of the manor, is a case of this kind. The covenant was held to pass to the grantee of the manor, although there was nothing in the shape of tenure between the parties. (5 Co., 176.)
In the case of Brewster v. Kidgell, before referred to, a covenant to pay a rent charge in fee, free from any deduction for taxes, was held to run with the land, without the aid of tenure.
In Holmes v. Buckley (Prec. in Ch., 39; 1 Eq. Cas. Abr., 27, pl. 4), one had granted, in 1622, a water-course through his lands,, and covenanted to, cleanse it, and in 1691, after the lands and the water-course had passed through several persons by assignment, it was held that the covenant was binding in favor of the assignee of the water-course, against the assignee of the land.
The case of Morse v. Aldrich (19 Pick, 454), was of a similar character. There had been a grant of the right to dig and carry away mud from the mill pond of the grantor, with a *567 covenant on his part that he would draw off his pond when requested, in August or September, not exceeding six days in each year, to give an opportunity to dig and remove the mud. The action was against a portion of the heirs, and the assignees of other heirs of the covenantor, for a breach of this covenant. The Court held the defendants liable, on the ground that the contract was a grant of a subordinate interest in the lands, and the reversion or residue of the estate being reserved by the grantor, all covenants in support of the grant, o.r in relation to the beneficial enjoyment of it, were real covenants and bound the assignee. There was held to be, in that case, such a privity of estate between the parties, as made the cove nant run with the land.
In the" case of the Trustees of Watertown v. Cowen (4 Paige, 510), it was held by Chancellor Walworth that a covenant by the grantor, in a conveyance of lands in fee, not to erect a building on a common or square, owned by him, in front of the premises conveyed-, was a covenant running with the land, and passed to asubsequent grantee of the premises, without any special assignment of the covenant. Decisions embracing the same principle were made in Hills v. Miller (3 Paige, 254), and Barrow v. Richard (8 id., 351). In none of these cases was there-any relation of tenure between the parties.
The ordinary eases of covenants of warranty, for quiet enjoyment, and against incumbrances, in conveyances in fee, are familiar examples of covenants running with the land, where no tenure exists. The answer which is given to these cases by those who contend that the presence of tenure is necessary to enable covenants to run with the land, is, that the -benefit of covenants may run with the land without tenure, but that . the burden cannot. That distinction cannot be reconciled with .the decisions in Brewster v. Kidgell and Holmes v. Buckley, Morse v. Aldrich, or The Trustees of Watertown v. Cowen, above cited, and it has been repudiated in this Court, in the case of Van Rensselaer v. Hays, before referred to. Clearly, therefore, the presence of tenure is not necessary to enable cove *568 nants, either as to their benefits or their burdens, to run with land.
If the relation of landlord and tenant between the parties, was, as has been claimed, necessary to render covenants assignable, it would not be difficult to show that that relation exists in this case. A rent charge in fee, with the right of entry for default of payment, although not constituting a reversion, creates an interest in the land out of which the rent issues. (Jemmot v. Cooley, 1 Lev., 170; S. C., 1 Saund., 112; 2 John. Cas., 26.) The payments covenanted to be made in this case are not, as is claimed by the defendant’s counsel, purchase money payments but rent payments, although the conveyance of the land in fee constituted the consideration of the grant of the rent.' The payments are as clearly rent as they would have been if the like rent had been granted for the same consideration, by the original covenantor, out of other lands previously owned by him. (Littleton, §§ 217, 218, 219; Co. Litt., 143, b, 144, a.) In many of the cases in our courts, between parties similarly situated, they have been spoken of and treated as landlords and tenants, and the decisions in the cases of Van Rensselaer v. Snyder (13 N. Y., 299), and Van Rensselaer v. Ball (19 id., 100), can be sustained on no other ground, as they depended entirely upon a statute applicable only to parties holding that relation. (2 R. S., p. 505, § 30.)
The other branch of the objection is that covenants can run only with land. All the reasons for holding covenants relating to lands assignable apply with equal force to covenants relating to incorporeal hereditaments. (Platt on Covenants, 461; Norman v. Wells, 17 Wend., 146). The doctrine of Lord Holt, in Brewster v. Kidgell (supra), is that the covenant for the payment of a rent-charge in fee, would run with the rent, but the case did not involve that question, as the action was by the original covenantee. The opinion of Mr.. Sugden, ° as has been seen, concurs with that of Lord Holt, and it has been decided in England that a covenant runs with a lease of tithes, which, like rents, are mere incorporeal hereditaments. (Bally v. Wells, 3 Wils, 25, 30; 2 Smith’s Leading Cases, 3 *569 Law Libr. ed., 125, note to Spencer’s Case.) The cases of Holmes v. Buckley and Morse v. Aldrich (supra), where covenants were held to run with grants of a water-course, and of a right to dig and remove soil, are to the same effect, those grants not giving to the grantees any title to lands, but only easements in the lands of the grantors. It is a settled proposition, therefore, that covenants may run with incorporeal as well as with corporeal, hereditaments.
But the question is not an open one in this State, whether covenants for the payment of rents pass to the assignee of the rents, without the aid of any reversion in the assignee. In the case of Demarest v. Willard (8 Cow., 206), the plaintiff had leased a house and lot to the defendant for two years, at an annual rent of $600, payable quarterly. The defendant covenanted to pay the rent, and to deliver up the premises at the end of the term, in good repair. The action was brought upon the covenant after the expiration of the term, the plaintiff claiming for rent in arrear, and damages because the premises were not delivered up in good repair. It was shown on the part of the defendant, that the plaintiff had assigned the lease to one Haswell, with all the rents to become due and payable during the term. The Court held that our statute to enable grantees of reversions to take advantage of conditions to be performed by lessees, had no application to the case, as the reversion had not been granted to Haswell. But it was nevertheless held, “ that Haswell might sue for and recover th'e rent in arrear, and consequently the plaintiff could not.” There had been a re-assignment of the arrears of rent by Has-well, after the expiration of the term, to the plaintiff. In regard to that, Chief Justice Savage, who delivered the opinion of the Court, said: “ The re-assignment by Haswell to the plaintiff, was perfectly Useless, in respect to the maintaining the suit. Arrears of rent are a chose in action, and not assignable like accruing rent. Haswell was assigned of the rent, and the whole became due before the re-assignment. If the plaintiff can recover the arrears it must be in the name of Haswell.” The Chief Justice, in his opinion, also refers to a case between *570 Littlewood and Jackson, which had been decided by the same court seven years earlier (in 1820), in which the plaintiff, who was assignee of 1550 years, of á term of 1590 years, having no interest in the reversion, was held entitled to recover for nine years’ rent, which fell due during the portion of the term assigned to him. The Chief Justice said: “ As I understand this case, it decides that the assignee of the rent may recover it in that character, without being assignee of the reversion.”
The rulihg in these cases has been repeatedly followed since, both by the. Supreme Court and the Court of Chancery. Willard v. Tillman, 19 Wend., 358; The Same v. The Same, 2 Hill, 274; Childs v. Clark, 3 Barb. Ch., 52.)
In the case last cited, the plaintiff as the assignee of the lease and rents for seven years out of a term of twenty years, filed a bill against assignees of the lease, to recover arrears of rent which became due to him during his portion of the term, the original lessee being insolvent. On demurrer, the chancellor dismissed the bill, on the ground that the plaintiff, as assignee of the rent, had a perfect remedy at' law, against the assignees of the lessee, to recover such rent. In his opinion, the chancellor says: “ It is settled, both in this state and in England, that an assignment creates such a privity of estate between the assignee and the lessee that the former may maintain a suit in his own name for the rent which accrues and becomes payable while, such privity .of estate exists.” (Ardo v. Watkins, Cro. Eliz., 637-651; Allen v. Bryan, 5 B. & C., 512; Stevenson v. Lambard, 2 East., 576.)
In the case cited from 2 Hill, 274, Bronson, J., expressed some dissatisfaction with the previous cases; “ but,” he added “ the right of the assignee of the rent to sue in his own name was recognized by this court in Demarest v. Willard, and we ought not now to depart from that doctrine.” The reasoning of the learned justice shows that his doubts arose from his recognition of the doctrine that tenure, in its feudal sense, was necessary to enable covenants to run with land or real estate a doctrine which I think the cases show cannot be sustained-These cases related to leases for years only, but the doctrine *571 of maintenance, which alone stands in the plaintiff’s way, is equally applicable to temporary and to perpetual covenants; and if, for any reason,'temporary covenants should be excepted from its. influence, there is much greater reason for excepting perpetual covenants of like character. It appears to me, therefore, to be substantially settled that there is such a privity of estate between the assignee of the rent, who, from the fact that it is by law assignable, is entitled to. demand and receive it, and the assignee of the land out of which it issues, and who is bound by the-covenant of his assignor to pay it, that the former, without any reversion in the land, can maintain an action on the covenant, at law, against the latter; and that there is no distinction in this respect between a rent in fee and one for life or years.
This conclusion renders it unnecessary to consider, at much length, the question as to the effect of the Code of Procedure upon the rights and liabilities of the parties under the, covenant, in question. Still, as the only objection which existed at common law to the assignment of merely personal covenants, so as to give a right of action to the assignee, grew out of the doctrine of maintenance, which has been entirely abo; lished in this state, so far as relates to ordinary choses in action, by the Code of Procedure (§§ 111, 112), I do not see why the assignee of the rent could not now nlaintain an action on the covenant for the payment of such rent, in his own name, against any person bound by the covenant to pay it, whether the benefit' of the covenant did or did not run, at common law, with the rent. Chapter 197 of the Laws of 1835 would have had the same effect upon the present action, if it had not been superseded by the more comprehensive provisions of the Code, to which reference has been made.
The abolition of the doctrine of maintenance has no bearing upon the question of the liability of the assignee of the land to an action upon the covenants of his assignor, but that liability was shown, in the case of Van Rensselaer v. Hays (supra), to exist at common law; leaving undetermined only the ques- • tion in whose name, as plaintiff, such liability could be enforced.
*572 ,If any doubt can be held to exist in regard to the liability of the defendant to the plaintiff, in an action at law upon the covenant, there is none whatever as to his liability in equity (19 H. Y., 85); and the merger, so far as relates to the forms of proceeding, of legal and equitable remedies, by the Code of Procedure, would entitle the plaintiff to maintain the action on that ground, the case containing all the facts which are necessary to show his equitable right. (Brewster v. Kidgell, 12 Mod., 166; The City of London v. Richmond, 2 Vern., 421; Keffel v. Bailey, 2 Myl. & Keen, 517; Tulk v. Moxhay, 2 Phil., 774; Livingston v. Livingston, 4 John. Ch., 287; Rawle on Covenants, 298, 300.)
In my opinion, however, the right of the plaintiff to recover in this case is entirely clear, upon the ground that the covenants at common law run, as was said by Mr. Sugden, with the rent, in the hands of the assignee, so as to enable him to sue upon them, and with the land itself in the hands of the assignee, so as to render him liable to be sued upon them; and that for that reason the judgment should be affirmed.
Wright and Rosekrans, Js., took no part in the decision; all the other judges concurring,
Judgment affirmed.